OPINION OF THE COURT
Smith, J.
The issue in this case is whether the determination of the State Department of Health (State DOH), denying State aid reimbursement to the New York City Department of Health (City DOH) for certain public health services that were contracted-out to other City agencies, was arbitrary and capricious.
In 1986, the Legislature enacted, effective January 1, 1988, a new article 6 of the Public Health Law (L 1986, ch 901) "to increase State assistance for public health and to encourage enhanced local public health activities” (Governor’s Mem approving L 1986, ch 901, 1986 NY Legis Ann, at 367). The new legislation was designed to assist localities in providing specific health care needs. The legislation was designed to *729 support and increase the level of funding and oversight for such programs but not to supplant such funding.
The new article 6 governs State reimbursement for local public health services and establishes new procedures for State review of those services to determine eligibility for reimbursement. A municipality is required, among other things, to submit to the State DOH an application for State aid, a municipal public health services plan and a detailed report of all expenditures on public health services funded by the State (see, Public Health Law § 600). The municipality is also required to employ a Commissioner of Health to supervise the provision of public health services (see, id.; § 604). The application for State aid must include an organizational chart of the municipal health agency, a detailed budget of proposed expenditures, a description of proposed program activities, a copy of the municipal public health services plan and a certification from a governing body of the municipality that the proposed expenditures are consistent with the plan (see, Public Health Law § 601).
The purpose of the municipal health services plan must be to "maintain and improve the health status of [the] residents [of the municipality], maintain and improve the accessibility and quality of health care, and assist in containing the costs of the health care system” (Public Health Law § 602 [2] [b]). Services that promote the public health of the residents of the municipality and, thus may be incorporated in the plan, include (1) family health, (2) disease control, (3) health education and guidance, (4) community health assessment, and (5) environmental health (see, Public Health Law § 602 [3] [b]). The plan must include, at a minimum, an estimate and description of the immediate and long-term needs for public health services in the municipality, a statement and description of the public health objectives of the municipality, a description of the programs for achieving those goals, a projected two-year plan for expenditures necessary to implement the programs, a general description of available health services, the number of staff people required to provide the necessary services, a fee and revenue plan and evidence that the governing body of the municipality has adopted the plan as a basis for the municipality’s public health activities (see, Public Health Law § 602).
The State DOH is authorized to promulgate rules and regulations that define the activities within each of the five *730 public health service categories (see, Public Health Law § 602 [3] [b]). In addition, the State DOH may withhold State aid reimbursement if the municipality does not render services jn conformance with the rules or regulations or with the statutory provisions regarding State aid reimbursement (see, Public Health Law § 603 [2]).
Effective January 1, 1988, the State DOH promulgated regulations implementing the new provisions of the Public Health Law (see, 10 NYCRR 40-1.0 et seq.). The regulations require municipalities to apply annually for State aid reimbursement (10 NYCRR 40-1.0), to biennially submit a municipal public health service plan (10 NYCRR 40-1.10), and to specify the programs and services in the plan that are eligible or ineligible for State aid reimbursement (10 NYCRR 40-1.52, 40-1.53). Pursuant to the regulations, public health services rendered under contract with municipalities are eligible for reimbursement (10 NYCRR 40-1.52 [d]), provided that the Commissioner of Health maintains "supervision” of those services (10 NYCRR 40-1.30 [b] [1]). However, the cost of programs or services for which municipalities have been given legal responsibility is ineligible for reimbursement (see, 10 NYCRR 40-1.53 [p]).
On April 23, 1990, the City DOH submitted its municipal health services plan for fiscal years 1991 and 1992 to the State DOH. The plan included certain public health services that were provided through contracts with other City agencies, including the New York City Health and Hospitals Corporation (City HHC), the New York City Department of Environmental Protection (City DEP), and the New York City Department of Housing Preservation and Development (City HPD). The plan also included a description of the public health services furnished by these agencies. The services provided by the City HHC included public health clinics providing assistance in family planning, prenatal care, child care, screening and treatment of sexually transmitted diseases, screening, counseling and treatment of HIV-infected citizens, and the coordination of emergency medical services. The City HPD provided lead paint inspections, and the City DEP supplied emergency responses to the presence of hazardous materials. Pursuant to the contracts, the City DOH required the City agencies to submit detailed quarterly financial reports itemizing the applicable expenses incurred by the agencies during the previous three months. In addition, the City DOH assigned members of its staff to review and audit the financial reports.
*731 On August 31, 1990, the City DOH submitted applications for State aid reimbursement for services totalling $77,474,254 provided pursuant to its submitted plan. The State DOH approved reimbursement for $68,500,946 and rejected payment for $8,973,311, which represented the cost of public health services provided by the City HHC, the City DEP and the City HPD. The State DOH asserted, without elaboration, that the cost associated with the services provided by the City agencies was "determined ineligible for state aid reimbursement.”
Petitioners, collectively referred to as the City DOH, commenced this CPLR article 78 proceeding challenging the State DOH’s decision to deny the $8,973,311 in State aid reimbursement. Supreme Court dismissed the petition, concluding, inter alla, that the State DOH acted within its statutory mandate in denying reimbursement, because "[the] City agencies act as independent entities and are subject to the supervisory control of their respective agency heads.” The court also rejected the claim that the City agencies were not "legally responsible” for the services at issue. The Appellate Division reversed, on the law, and granted the petition, stating that the agencies involved were not required by law to provide the services in question, and that the City DOH maintained sufficient supervision over the contracted-out services to entitle it to reimbursement (195 AD2d 275). This Court granted leave to appeal (82 NY2d 659).
The State DOH argues that the interpretation of the statutory provisions at issue here involves knowledge and understanding of the underlying operational practices of the agencies, as opposed to a mere reading and analysis of the statute and, thus, the Court should defer to its expertise in the area. The State DOH also urges that its interpretation of the statutory provisions is consistent with the legislative intent of article 6. The City DOH contends that the interpretation afforded by the State DOH is irrational because the public health expenditures made pursuant to the contracts are the types of expenditures for which the Legislature intended State DOH to reimburse a municipality.
There is no reason to apply the deference doctrine urged by the State DOH. It is clear that the new provisions of article 6 of the Public Health Law were enacted to "ensure that State resources will be committed to strengthen the existing local public health infrastructure and to expand preventive health *732 programs [such as prenatal care, environmental health, nutrition and health education programs]” (Governor’s Mem approving L 1986, ch 901, 1986 NY Legis Ann, at 367).
Public Health Law § 604 requires a municipality to "employ a full-time local commissioner of health * * * to supervise the provision of public health services” in order to be eligible for State aid reimbursement. In its implementing regulation, the State DOH essentially repeats the statutory language, including the term "supervise.” Thus, the implementing regulation provides, in part, "Each municipality shall supervise public health services * * * [and] such supervision shall be provided by a local commissioner of health” (10 NYCRR 40-1.30 [b] [1]).
The services that were contracted-out to the City agencies included family planning, prenatal care, child care, screening and treatment of sexually transmitted diseases, screening, counseling and treatment of HIV-infected citizens, emergency medical services, lead paint inspections, and environmental health services. Pursuant to the contracts, the City agencies were required to submit detailed quarterly financial reports itemizing the applicable expenses incurred, and the City DOH was required to assign staff members to review and audit the financial reports. We conclude that this level of supervision provided by the City DOH over the contracting City agencies wholly comports with the intent of the Legislature to increase State assistance for the stated areas of public health and to encourage enhanced local public health activities in those areas.
The State DOH also contends that the interpretation of its own regulation afforded by the Commissioner deserves great deference because the three City agencies are empowered and, thus, "legally responsible,” to provide the services for which reimbursement is sought. The City DOH argues that the City agencies are authorized, but not legally responsible, to provide the contracted-for services.
Public Health Law § 603 authorizes the Commissioner of Health to withhold State aid reimbursement if it is determined that the services for which reimbursement is sought are not rendered in conformance with the rules and regulations established by the Commissioner. To effectuate this legislative authorization, the Commissioner promulgated a regulation disallowing reimbursement for the "cost of activities for which any other agency * * * has been given legal responsibility” (10 NYCRR 40-1.53 [p]).
*733 We have previously stated that where a regulation is not inconsistent with a statute and does not exceed it, the interpretation given to it by the Commissioner of Health is "controlling and will not be disturbed in the absence of weighty reasons” and unless it is arbitrary and capricious (Matter of Sigety v Ingraham, 29 NY2d 110, 114; see also, Matter of Cortlandt Nursing Care Ctr. v Whalen, 46 NY2d 979, 980). Applying that principle to the case before us, we conclude that there are controlling reasons why the decision of the DOH, denying State aid reimbursement on the ground that the City agencies had a legal responsibility to provide the contracted-for public health services, cannot stand.
We agree with the Appellate Division that although the City agencies involved are authorized to provide the contracted-for public health services (see, McKinney’s Uncons Laws of NY § 7382 [New York City Health and Hospitals Corporation Act § 2; L 1969, ch 1016, § 1, as amended] [authorizing the City HHC to provide such health and medical services as are necessary to protect and promote the health, safety and welfare of the inhabitants of the State]; NY City Charter § 1403 [h] [empowering the City DEP to respond to emergencies caused by releases or threatened releases of hazardous substances into the environment]; § 1803 [2] [authorizing the City HPD to enter and inspect any building, structure, enclosure or premises]), none of the agencies has a "legal responsibility” to do so. Moreover, nothing in the statutory provisions imposes a legal responsibility on the City agencies to provide those services pursuant to contract with the City DOH. Rather, the contractual relationship between the City DOH and the City agencies empowered to provide the public health services at issue here may serve one of the goals of the new statutory provisions, namely "yield[ing] enormous cost savings” (see, Governor’s Mem approving L 1986, ch 901, 1986 NY Legis Ann, at 367).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
Order affirmed, with costs.